IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **STEPHAN A. RICKS** | § | |
| | § | |
| **V.** | § | A-10-CV-185-LY |
| | § | |
| **DEBRA WANSER in her official capacity** | § | |
| **as Commissioner of the Department of** | § | |
| **Assistive and Rehabilitative Services, and** | § | |
| **DALE PROPP, in his official capacity as** | § | |
| **Director of the Texas State Law Library** | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants the State Law Library and Dale Propp's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (Clerk's Doc. No. 106) filed December 12, 2011; Plaintiff's Response to Motion for Summary Judgment of Defendants the State Law Library and Dale Propp (Clerk's Doc. No. 109) filed January 10, 2012; and Defendants the State Law Library and Dale Propp's Reply to Plaintiff's Response to Motion for Summary Judgment (Clerk's Doc. No. 111) filed January 23, 2012. The District Court referred these motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned submits the following Report and Recommendation to the District Court.

## I. ANALYSIS

### A. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156,

164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### B.     Procedural Background

Plaintiff Stephen Ricks brings this suit seeking declaratory and injunctive relief under Title II of the Americans with Disabilities Act (the "ADA"), Section 504 of the Rehabilitation Act of 1973, as amended (the "Rehab Act"), and for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This case was filed by Ricks pro se, on March 19, 2010. At the Court's direction, Ricks filed a More Definite Statement, which the Court reviewed for frivolousness. In that pleading, Ricks alleged that various defendants, all of whom he is sued in their official capacities, violated his rights pursuant to Title II and Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the Privacy Act of 1974 requiring agencies to make reasonable efforts to assure that records are accurate, timely, and relevant. He also made claims for: retaliation; official misconduct; collusion; violations of his First Amendment right to a full, fair, and complete redress of grievances; misappropriation of funds; malicious prosecution, failure to protect Ricks's rights; and violation of the Fair Credit Reporting Act and the Fair Debt Collection Practices Act.

The undersigned issued a Report and Recommendation on June 3, 2010, recommending that all claims against all parties be dismissed with the exception of the official capacity claims against

Director of the Texas State Law Library Dale Propp and Commissioner of the Department of Assistive and Rehabilitative Department, Terrell Murphy. Specifically, the Court recommended that Judge Yeakel:

> DISMISS WITH PREJUDICE all claims against defendants Murphy and Propp in their individual and official capacities with the exception of Plaintiff's official capacity claims for prospective injunctive relief, brought pursuant to Titles II and III of the ADA and Section 504 of the Rehabilitation Act. The specific claims that would remain if this recommendation is adopted are: (1) Plaintiff's request that Murphy, in his official capacity as Commissioner of the Department of Assistive and Rehabilitative Services, be required to provide Plaintiff with various adaptive aids and technologies for the blind; and (2) Plaintiff's request that Propp, in his official capacity as the Director of the Texas State Law Library, be required to make the State Library ADA compliant with the "most current adaptive technologies" and provide a fully-trained ADA compliance officer.

(Clerk's Doc. No. 9). The District Court adopted the Report and Recommendation on July 27, 2010, dismissing all defendants except Terrell Murphy and Dale Propp. On February 9, 2011, the Court entered an Order substituting Interim Commissioner Department of Assistive and Rehabilitative Services Debra Wanser for Commissioner Terrell Murphy as Murphy had retired from his position. On May 26, 2011, the Court granted Plaintiff's Motion to Appoint Counsel, and appointed Srinivas Behara to represent Ricks. On December 9, 2011, pursuant to the parties' Stipulation of Dismissal, the District Court entered an Order dismissing all claims against Debra Wanser and the Department of Assistive and Rehabilitative Services. Remaining Defendants Dale Propp ("Propp") and the Texas State Law Library ("Library") now move for summary judgment on Ricks's remaining claims requesting declaratory and prospective injunctive relief.

### C.     Factual Background

Ricks describes himself as a single, African-American male born in Steele, Missouri in March of 1961. Plaintiff's First Amended Complaint at ¶ 13. Ricks is an "individual with a disability" as defined under the statute, in pertinent part, as "an individual who has a physical or

4

mental impairment that substantially limits one or more major life activities of such individual." *Id.* at ¶ 15; 42 U.S.C. § 12102. Ricks has been legally blind due to detached retinas since an early age. *Id.* at ¶ 13.

Ricks alleges he has attempted to utilize the services of the Texas State Law Library for several years, and specifically since 2008. *Id.* at ¶ 41. Ricks contends that the Texas State Law Library has installed various versions of speaking software which were antiquated, non-working and had severe technical problems. *Id.* at ¶ 42. Ricks also contends that when the software was updated, the Texas State Law Library made the software inaccessible to disabled individuals because there was no training officer to assist in library visitors learning to use the software. *Id.* at ¶ 43. Ricks also contends that the Texas State Law Library does not have a valid ADA compliance officer on staff to deal with the non-compliance issues he raises. *Id.* at ¶ 44.

In 2009, Ricks raised his concerns that the computers were inaccessible with Library staff. Ricks Depo. at p. 102. In response to his complaint, within two to three weeks, State Law Library staff member and ADA coordinator Cindy Palmer met with Ricks to discover what type of software Ricks thought would make the computers accessible. *Id.* at p. 104. Ricks suggested a Macintosh computer or JAWS and/or Window Eyes software. *Id.* Palmer forwarded the request to the Office of Court Administration who determined that the State Law Library could meet Ricks's request by purchasing JAWS and informed Palmer of this on July 15, 2009. Affidavit of Cynthia Palmer. The State Law Library also made arrangements to install interim Non Visual Desktop Access on five computers until JAWS was received and installed. *Id.* The State Law Library provided Ricks with a facilitator to help him with the computers until the software was in place. *Id.* at p. 119. In September of 2009, on two occasions, Ricks attempted to use the JAWS software and claims it did not work. Ricks's Depo. at p. 109, 115. Ricks testified that since that time he has visited the Library

5

but not attempted to use the JAWS software, although he had been informed by the staff that JAWS was now working. *Id.* at p. 110. Someone from the Library staff provided Ricks with information on receiving special training on how to use the JAWS software, but he thought that the Library was required to provide the JAWS training to him on Library premises and not at another state agency's premises. *Id.* at p. 123. Ricks did not seek any JAWS training because he thought the Library was ducking its responsibility. *Id.* at p. 124.

At the time Ricks made his initial complaints about the computers in 2009, Cindy Palmer told him she was the ADA compliance officer, but that she had just taken over the position from someone who had retired, and did not know much about the job. *Id.* at p. 126-7. Ricks last communicated with Cindy Palmer in September of 2009, and testified in his deposition that he has no idea about the current state of her training on the Americans with Disabilities Act. *Id.* at p. 128-9.

In the past, the staff at the Library helped Ricks do computer research, researched issues relating to his credit history, transcribed information for him, and edited personal letters for him *Id.* at pp.129-139. On December 2, 2009, Ricks and Palmer met at the Library, and Palmer informed him that the Library staff would no longer assist him with non-library related services and the Library does not provide personal business services to patrons. Palmer Affidavit. At this time, Ricks requested a copy of the Library's policies in Braille. Palmer made arrangements for the documents to be converted to Braille and made the items available to Ricks for pickup during the week of December 4, 2009. *Id.* Ricks never picked up the documents. Ricks Depo. at pp. 161-62.

Ricks seeks a declaration and prospective injunctive relief to require the Library and Propp to: (1) provide a fully ADA-compliant State Law Library; (2) provide a fully-trained ADA compliance officer at the State Law Library; and (3) and provide the most current adaptive technologies at the Texas State Law Library.

**D.     Subject Matter Jurisdiction and Standing**

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Id.* The plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008).  Defendant contends that Ricks's claims should be dismissed as he lacks standing the claims.  Article III of the Constitution limits the jurisdiction of federal courts to "cases and controversies."  *United States Parole Comm' v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  This requirement, like other jurisdictional requirements, is not subject to waiver and demands strict compliance. *Id.*

""[T]he irreducible constitutional minimum of standing contains three elements.*" Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  These elements are (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of independent action of some third party not before the court; and (3) the likelihood that a favorable decision will redress the injury. *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Defendants argue that this Court should dismiss Ricks's claims for lack of subject matter jurisdiction on the grounds that Ricks lacks standing to seek injunctive relief because he does not

allege any ongoing injury related to his claims. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (In order to have standing to seek injunctive relief, a plaintiff must be able to demonstrate that he will suffer an injury in fact, meaning a "real and immediate threat" of repeated future harm if the injunction is not granted.); *Lujan*, 504 U.S. 564 (citing *Lyons*, 461 U.S. at 102) ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . if unaccompanied by any continuing, present adverse effects.'"). Ricks's Response does not dispute this. *See* Response (failing to respond to any of Defendants' arguments regarding Ricks's lack of standing). As the Fifth Circuit recently noted, "This principle is rote. To obtain forward-looking equitable remedies, a plaintiff must show she faces imminent threat of future injury." *Fisher v. Univ. of Tex. at Austin*, 631 F.3d 213, 217 (5th Cir. 2011); *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (In order to have standing to seek injunctive relief, a plaintiff must demonstrate that he is "likely to suffer future injury by the defendant.").

Ricks cannot establish standing to bring his claims under Title II of the ADA, or the Rehabilitation Act, because he has failed to show that he is threatened with a future injury. Ricks has failed to identify the specific ADA guidelines with which the Library currently fails to comply. At Ricks's request, the Library acquired adaptive software, and although Ricks asserts that the software did not work correctly, the summary judgment evidence is that Ricks possibly tried the software only on two occasions when it was newly installed sometime in late summer or early fall of 2009. Ricks's Depo. at p. 148, 170. Ricks testified that he has never tried to access the JAWS adaptive software after September of 2009. *Id.* at p. 175. Moreover, the evidence shows that Library staff provided Ricks with help with his legal research needs by retrieving materials, conducting computer searches, and reading text and thus he was not excluded from using the State Law

Library's services even before the Library acquired adaptive software on its computers. Affidavit of Dale Propp; Affidavit of Cynthia Palmer; Ricks's Depo. at p. 129.

The relevant regulation requires that public entities "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of a service . . . conducted by a public entity." 28 C.F.R. § 35.160(b)(1) (2011). "Auxiliary aids and services" are defined as including "qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 35.104 (2011). When "determining what types of auxiliary aid and service is necessary, [the] public entity shall give primary consideration to the requests of the individual with disabilities." 28 C.F.R. § 35.160(b)(2) (2011). However, although deference should be given to the auxiliary aid requested, Defendant need not honor such request if it "can demonstrate that another effective means of communication exists." *Bircoll v. Miami–Dade Cnty.*, 480 F.3d 1072, 1082 (11th Cir. 2007).[1]

The evidence before the Court shows that the Library provided Ricks with individual qualified readers as defined in the regulations (28 C.F.R. § 35.104), and then purchased the JAWS

---

[1] *See also Chisholm v. McManimon*, 275 F.3d 315, 326 n. 10 (3d Cir. 2001); *see also Tucker v. Tennessee*, 539 F.3d 526, 533 (6th Cir. 2008) (stating that accommodation is not a violation of ADA, even if "not ideal," so long as it is reasonable and effective); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir.1997) (stating that although consideration should be given to the individual's choice, "[n]othing in the ADA itself or its implementing regulations dictates that a disabled individual must be provided with the type of auxiliary aid or service he requests" and that deference to the requests is "by no means required"); *Petersen v.. Hastings Pub. Schs.*, 31 F.3d 705, 70809 (8th Cir. 1994) (stating auxiliary aids need not be those chosen by individual if they are effective).

software at his request. Although the Library did not provide Ricks with his first choice of requested software, the summary judgment evidence shows that the existing accommodations were more than sufficient to give Ricks effective and meaningful access to the Library.[2] *Wells v. Thaler,* Slip Copy, 2012 WL 386297 (5th Cir. 2012). Title II does not require that public entities employ "any and all means", but rather "reasonable modifications" that would not fundamentally alter the services provided" when providing services to disabled individuals. 28 C.F.R. § 35.150(a)(1); *Tennessee v. Lane*, 541 U.S. 509, 511 (2004). Ricks used the Library's services before and after the installation of the JAWS software. Propp Affidavit; Palmer Affidavit; Ricks's Depo. at pp. 102-105, 118-119.

There is no evidence that the installed software is not functioning properly and Ricks does not contend that Library computers are currently inaccessible to him based on antiquated software and/or non-working software. Ricks's Depo. at pp. 153-158 (Ricks testified that he does not know if library computers have up-to-date software); *Id.* at. pp. 114-115, 134-136 (Ricks testified that the last time he attempted to use Library computers with the adaptive software was in September 2009). Ricks fails to show that he suffers continuing harm or a real and immediate threat of repeated injury in the future because of antiquated and non-working software on Library computers. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

To the extent Ricks's claims are based on any purported failure of the Library to provide a training officer to teach him how to use adaptive software installed on Library computers, the evidence does support his claim that he is in immediate danger of suffering a repeated injury. The evidence shows that the Library directed him to a source of JAWS training at the Department of Assistive and Rehabilitative Services and Ricks chose not to attend the training. Ricks's Depo. at

---

[2] Ricks's first choice was a Macintosh computer with Voiceover software. The State's Office of Court Administration did not support Macintosh and JAWS was represented as the "gold standard" of screen reading software. Palmer Affidavit.

p. 124. Public entities may select among a number of alternatives for accomplishing program accessibility and achieving ADA compliance, "including the relocation of services. . . ." *Iverson v. City of Boston*, 452 F.3d 94, 99 (1st Cir. 2006); s*ee also Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6 (1st Cir. 2000) (emphasizing Title II's focus on program accessibility rather than facilities accessibility in order to ensure access to public services). Nothing in the ADA required the Library to provide Ricks with JAWS training on site. The evidence also shows that the Library currently has two Electronic Services Librarians available to help patrons use JAWS, that Library staff currently can assist the public with the basic functions of the software to conduct library research, and that Library staff continues to attend training sessions to maintain the ability to provide such assistance. Propp Affidavit. Ricks offers no controverting summary judgment evidence. Ricks's Depo. at pp. 114-115 (admitting that he has no knowledge of staff's current training and level of assistance they can offer the public).

Ricks also offers no evidence that the Library does not currently employ a properly trained ADA coordinator or that he is likely to suffer harm based upon the Library's failure to employ one. Ricks's Depo at pp. 153-158 (admitting that he does not know if the Library has an ADA coordinator that has received training). The ADA requires that public entities with over fifty employees must have one designated employee that coordinates the entity's efforts to comply with the ADA's requirements. 28 U.S.C. § 35.107. The entity is also obligated to provide its ADA coordinator's contact information to any interested persons. *Id.* The ADA does not establish a level of training that ADA coordinators must attain and/or complete. *See* 28 C.F.R. § 35.101, *et seq.*; *see also*, 42 U.S.C. § 12131, *et seq.*

Ricks does not dispute that the Library has an ADA coordinator, Cynthia Palmer. Propp Affidavit; Palmer Affidavit; Ricks's Depo. at pp. 125-28. Nor has he made any allegation that he

was unaware that Palmer was the Library's ADA coordinator. *See id.* Ricks simply claims that Palmer was not adequately trained at the time he first spoke to her. *Id.* However, ADA requirements are satisfied as long as the entity has one designated employee that coordinates the entity's efforts to comply with the ADA. 28 C.F.R. § 35.107. The evidence is that when Ricks complained to Palmer, she made every effort to accommodate his requests. Since Ricks has failed to show that he is likely to suffer a real and immediate threat of repeated future harm, he has failed to establish standing, and the Court does not have subject matter jurisdiction over his claims.

Similarly, even if this Court were to grant all of the prospective injunctive relief Ricks seeks, no injury would be redressed. The Library is already doing everything Ricks asks this Court to order it to do. Propp Depo. at ¶¶ 8-9 (Library has obtained various adaptive software and provides two Electronic Services Librarians to help patrons), ¶ 11 (Library staff and ADA coordinator have attended ADA training and adaptive software training), ¶¶ 4 and 10 (Library provided assistance to Ricks in using Library services); Palmer Affidavit at ¶¶ 3-8 (Ms. Palmer handled Ricks's complaints about computers), ¶ 9 and 11 (Palmer provided Ricks with information regarding where to receive training for JAWS), ¶ 14 (Palmer had Library polices transcribed to Braille for Ricks), ¶ 5 (discussing Palmer's ADA training); Propp Depo. at ¶ 8 (Two Electronic Services librarians are available to help patrons use JAWS). In this sense, Ricks claims are moot.

The Court finds Ricks lacks standing to seek injunctive relief because he fails to show the requisite ongoing injury or real and immediate threat of future injury from the Library's alleged failings, and because none of the relief Ricks seeks will redress any purported wrong.

### III. RECOMMENDATION

The Magistrate Judge RECOMMENDS that Defendants the State Law Library and Dale Propp's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (Clerk's

Doc. No. 106) be GRANTED and Ricks's claims against all remaining Defendants be DISMISSED WITHOUT PREJUDICE.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 12th day of April, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE